UNITED STATES  DISTRICT COURT

Northern District of California

LEN BRIESE,

               Plaintiff,                         No. C 08-4233 MEJ

   v.

                                  **ORDER RE: MOTIONS IN LIMINE**

WILLIAM J. TILLEY,

               Defendant.

_____/

## I.  INTRODUCTION

Before the Court are Defendant William Tilley's ("Defendant") Motions in Limine ("MIL") Nos. 1-6, filed September 9, 2010.  (Dkt. ##26-31.)  On September 16, 2010, Plaintiff filed oppositions to MIL Nos. 5 and 6.[1]  (Dkt. ##33, 34.)  On September 23, 2010, the Court held a pretrial conference, during which the parties presented further arguments regarding Defendant's MILs 5 and 6.  After consideration of the parties' papers and oral arguments, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

## II.  BACKGROUND

The instant lawsuit arose out of a motorcycle collision which occurred on July 21, 2007 in Lake County, California.  (Joint Pre-Trial Statement 1:24-25, Dkt. #25.)  Plaintiff was riding his Yamaha motorcycle on a winding road in unincorporated Lake County, and Defendant was driving his pickup truck with a trailer on it in the opposite direction, towards Plaintiff.  (MIL No. 1 1:22-26, Dkt. #26.)  Defendant was coming around a curve when his trailer went over the double yellow line and partially into Plaintiff's lane, and Plaintiff's motorcycle collided with Defendant's trailer.  *Id.* at 1:26-28.  Plaintiff lost control of his motorcycle, fractured and severely lacerated his left leg, and was then transported to Lakeside Hospital by emergency personnel.  *Id.* at 1:28-2:2.

---

[1]Plaintiff did not file any motions in limine.

1    Defendant previously admitted and has stipulated to liability and will not argue comparative

2    fault or that another party was the proximate cause of Plaintiff's injuries at trial.  (Joint Pre-Trial

3    Statement 2:8-9, 2:23-24, Dkt. #25.)  The only issues which remain for trial concern the nature and

4    extent of Plaintiff's future medical needs, the value of his general damages claim, and the nature and

5    extent of Plaintiff's future wage loss and general damages claims.  *Id.* at 2:12-14.

6    Trial in this matter is set to begin on Monday, October 25, 2010.

7                                          **III.  DISCUSSION**

8    **A.    MIL No. 1 (Dkt. #26)**

9    In his first MIL, Defendant moves to exclude any offer of settlement made during mediations

10   or settlement conferences if offered to prove liability or the value of Plaintiff's claim.  (MIL No. 1

11   2:8-12, Dkt. #26.)  Plaintiff did not file an opposition.

12   California Evidence Code[2] section 1152(a) contemplates offers of compromise, and provides

13   that any conduct or statements made in settlement negotiations are inadmissable to prove the

14   offeror's liability for loss or damage.

15   Based on the plain language of the California Evidence Code, and considering that Plaintiff

16   has not opposed Defendant's motion to exclude any offers of compromise, the Court GRANTS

17   Defendant's MIL No. 1.

18   **B.    MIL No. 2 (Dkt. #27)**

19   In his second MIL, Defendant moves to exclude any evidence that he carries liability

20   insurance, arguing that it is irrelevant.  (MIL No. 2 2:12-25, Dkt. #27.)  Plaintiff does not oppose

21   this MIL.

22   "Evidence that a person was, at the time a harm was suffered by another, insured wholly or

23   partially against loss arising from liability for that harm is inadmissible to prove negligence or other

24   _____

25   [2]Because Defendant resides in Oklahoma and the amount in controversy exceeds $75,000.00,

26   this Court is sitting in diversity and thus will apply the substantive law of California.  *Feldman v.

27   Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003).  Federal procedural and evidentiary rules will

     apply.  *Id.*

28

                                                   2

wrongdoing."  Cal. Evid. Code § 1155; *see also Schaefer/Karpf Productions v. CNA Ins. Co.*, 64 Cal. App. 4th 1306, 1313 (1998).  This rule is designed to prevent prejudicial evidence regarding insurance from being heard by juries.  *Roberts v. Home Ins. Indem. Co.*, 48 Cal. App. 3d 313, 321 (1975).

Based upon the plain language of the evidence code, the policy behind it, and Plaintiff's non-opposition, the Court GRANTS Defendant's MIL No. 2.

**C.    MIL No. 3 (Dkt. #28)**

Defendant next moves to prevent Plaintiff from calling any witnesses in his case-in-chief not listed in his Federal Rule of Civil Procedure ("Rule") 26 initial disclosures.  (MIL No. 3 2:6-9, Dkt. #28.)  Plaintiff offers no opposition.

Rule 26(a)(1(A) requires parties to disclose the name and information of any possible (non-impeachment) witnesses.  Rule 37(c) provides that any witness or information not disclosed in a party's Rule 26(a) disclosures is barred from presentation at trial.

The language of the federal rules is unambiguous.  Accordingly, the Court GRANTS Defendant's MIL No. 3.[3]

**D.    MIL No. 4 (Dkt. #29)**

In his fourth MIL, Defendant moves to exclude the traffic collision report relating to the subject incident.  (MIL No. 4 2:6-7, Dkt. #29.)  Defendant contends that because he has already admitted liability, Plaintiff is not entitled to introduce the traffic collision report as evidence other than for impeachment purposes, as the report constitutes hearsay.  *Id.* at 2:8-13.  Plaintiff offers no opposition to MIL No. 4.

A statement is hearsay if it was made out of court and is offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).

Defendant maintains that because the traffic collision report contains statements made by Plaintiff, Defendant, and witnesses to the incident, that it is comprised of out of court statements

---

[3]At the September 23, 2010 hearing, Plaintiff requested that Defendant also be precluded from calling witnesses not previously disclosed.  The Court GRANTS Plaintiff's request as well.

UNITED STATES DISTRICT COURT
For the Northern District of California

which would be hearsay if offered to prove the truth of the statements, unless offered for impeachment purposes.  (MIL No. 4 2:17-21, Dkt. #29.)  The Court agrees.  Accordingly, the Court GRANTS Defendant's MIL No. 4.

**E.      MIL No. 5 (Dkt. #30)**

In his fifth MIL, Defendant seeks to exclude the full billed amounts of Plaintiff's medical services from Sutter, the hospital where he was treated, because Kaiser, Plaintiff's healthcare provider, negotiated a lower amount and paid nearly four thousand dollars less than the amount billed.  (MIL No. 5 2:9-11, 5:1-10, Dkt. #30.)

In response, Plaintiff contends that, based on the collateral source rule, evidence that Plaintiff received benefits or compensation from other sources is inadmissible, and thus that the bill from Sutter should be admitted into evidence.  (Pl.'s Opp'n 2:1-10, Dkt. #33.)

"The Supreme Court of California has long adhered to the doctrine that if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor."  *Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 6 (1970).  This doctrine is known as the collateral source rule.  *Id.*  "As a matter of common law, California has adopted the collateral source rule, which includes the closely related principle that, jurors should not be told that plaintiff can recover compensation from a collateral source."  *King v. Willmet*, 187 Cal. App. 4th 313, 321 (2010) (internal citations omitted).  "For purposes of analysis, [the] plaintiff is deemed to have personally paid or incurred liability for these services and is entitled to recompense accordingly."  *Hanif v. Housing Authority*, 200 Cal. App. 3d 635, 640 (1988).  Further, "a person injured by another's tortious conduct is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort."  *Id.*

However, "[a]n injured plaintiff in a tort action cannot recover more than the amount of medical expenses he or she paid or incurred, even if the reasonable value of those services might be a greater sum."  *Katiuzhinsky v. Perry*, 152 Cal. App. 4th 1288, 1290 (2007).  Accordingly, a plaintiff cannot recover more than the actual amount expended or incurred for past medical services,

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   as long as that amount is reasonable. *Hanif*, 200 Cal. App. 3d at 643. The total amount billed to the

2   injured party is considered the total amount of expenses incurred. *King*, 187 Cal. App. 4th at 330.

3         Here, it is clear that a jury is entitled to hear evidence regarding the normal and actual rates

4   charged by the treatment provider as this information may provide a more accurate picture of the

5   extent of the plaintiff's injuries. *Nishihama*, 93 Cal. App. 4th at 309. Since 1970, it has been the

6   law in California that a plaintiff with the foresight to purchase insurance should receive the benefit

7   of his or her thrift, and the tortfeasor should not benefit by being held to a lower amount of damages.

8   *King*, 187 Cal. App. 4th at 330. It follows then that not only should Plaintiff be entitled to submit

9   evidence of the total amount of his hospital bills, but Defendant should be precluded from presenting

10  evidence of the amount paid by Plaintiff's insurer. *Hanif*, 200 Cal. App. 3d at 639 (denying the

11  defendant's motion in limine to exclude evidence of actual amount of hospital bills); *Katiuzhinsky*,

12  152 Cal. App. 4th at 1290 (finding error where the court barred introduction of actual amount of

13  hospital bills but allowed introduction of the amount paid by insurers); *Olsen v. Reid*, 164 Cal. App.

14  4th 200, 201 (2008) (denying the defendant's motion to admit evidence of what insurers actually

15  paid, stating that any reduction in the amount of the medical expense award would be handled after

16  trial). Accordingly, to the extent that Defendant's MIL No. 5 seeks to exclude evidence of the total

17  amount of Plaintiff's hospital bills, the Court DENIES Defendant's motion. Additionally, to the

18  extent that Defendant's MIL No. 5 seeks to introduce evidence of the amount actually paid by

19  Plaintiff's insurer, the Court DENIES the motion.

20        Furthermore, while *King* explicitly states that "the collateral source rule precludes the

21  reduction of the amount of medical expenses . . . incurred . . . for the rendered services to the cash

22  amount . . . accepted by [the] plaintiff's medical provider[,]" the state of California law regarding

23  post-verdict reduction motions is in flux. In years past, if a jury returned an award higher than the

24  actual amount expended on medical services, it appeared proper for courts to entertain a post-trial

25  motion to reduce the award. *Greer v. Buzgheia*, 141 Cal. App. 4th 1150, 1157 (2006). Thus, while

26  *King* appears to explicitly bar post-verdict reduction motions, two cases involving post-verdict

27  reductions are on appeal to the California State Supreme Court regarding the propriety of such

28

motions in connection with the policy aims of the collateral source rule. *See Howell v. Hamilton Meats*, 101 Cal. Rptr. 3d 805, 812 (2009) (holding that a post-verdict reduction to the amount actually paid by the plaintiff's insurer violated the collateral source rule); *Yanez v. SOMA Environmental Engineering*, 111 Cal. Rptr. 3d 257, 271 (2010) (holding that post-verdict reductions lack a foundation in law or policy). Accordingly, as stated by the Court at the September 23, 2010 hearing, it appears that California law currently permits post-verdict reduction motions. Thus, absent a showing that the California Supreme Court has ruled otherwise, the Court shall consider any such motion filed by Defendant.

**F.      MIL No. 6 (Dkt. #31)**

In his final MIL, Defendant moves to exclude any testimony in support of Plaintiff's future wage loss claim because, Defendant argues, such testimony would be speculative. (MIL No. 6 2:6-9, Dkt. #31.) Plaintiff maintains that he needs knee surgery which will require time off from work, hence the future wage loss claim. *Id.* at 2:5-8. However, Defendant argues that, although Plaintiff's experts state that he will most probably require a total left knee replacement as a result of the incident, they have not stated when Plaintiff will require the surgery. Therefore, Defendant contends that the future wage loss claim is speculative, as Plaintiff may not obtain the surgery until following his retirement. *Id.* at 2:10-17.

In response, Plaintiff argues that Defendant's motion is an improper use of the otion in limine procedure. (Pl.'s Opp'n 1:21-22, Dkt. #34.) Plaintiff maintains that nothing about the evidence that will be introduced on this issue is prejudicial to Defendant, and thus that Defendant's MIL No. 6 should be denied. *Id.* at 1:28-2:1, 3:19-21. At the September 23, 2010 hearing, Plaintiff's counsel stated that Plaintiff will testify at trial that he does not plan to retire until he is 70, and he is currently 54 years of age. Counsel also stated that Plaintiff will testify that he plans to have the surgery next July, as he recently started a new job and does not want to immediately take six weeks off from work.

"The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party." *People v. Morris*, 53 Cal.3d 152, 188 (1991).

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    "The advantage of such motions is to avoid the obviously futile attempt to unring the bell in the

2    event a motion to strike is granted in the proceedings before the jury." *Id.* (internal citations and

3    quotations omitted).

4         Here, Plaintiff's treating doctors have indicated that it is likely Plaintiff will have to undergo

5    surgery.  (Pl.'s Opp'n 2:4-3:15, Dkt. #34.)  Further, Plaintiff maintains that he will miss six weeks of

6    work as a result of the surgery, and as he currently earns $70,000.00 per year, he will lose $8,076.90

7    in wages.  *Id.* at 3:15-18.  While testimony regarding the knee surgery and resulting wage loss are

8    likely to be part of the trial, it is clearly within the jury's province to determine whether or not

9    Plaintiff is entitled to recover for any such future wage loss.  California Civil Code section 3283

10   provides that "[d]amages may be awarded, in a judicial proceeding, for detriment resulting after the

11   commencement thereof, or certain to result in the future."  Whether future detriment to the injured

12   party is reasonably certain to occur is a question for the jury.  *Ostertag v. Bethlehem Shipbuilding*

13   *Corp.*, 65 Cal. App. 2d 795, 807 (1944).  "[I]t is the province of the jury to determine from

14   testimony whether the injuries are such that future detriment is certain to occur . . . ." *Riggs v.*

15   *Gasser Motors*, 22 Cal. App. 2d 636, 640 (1937).  Thus, the Court finds it appropriate to permit

16   testimony, including cross examination, on this issue and to allow the jury to determine whether

17   Plaintiff is entitled to any recovery.

18        In his motion, Defendant cites a 1938 California Supreme Court case which stands for the

19   proposition that juries may not consider consequences which are only likely to occur.  *Bellman v.*

20   *San Francisco High School* 11 Cal.2d 576, 588 (1938).  However, based on the deposition testimony

21   presented in this matter, it appears that Plaintiff's knee surgery is more than likely to occur.

22   Plaintiff's treating physician, Dr. Johnson Clark, Jr., testified at his deposition that it was more likely

23   than not that Plaintiff was going to require a knee replacement, and that without even looking at

24   Plaintiff's x-rays but knowing his type of injury, he would say a knee replacement was expected.

25   (Pl.'s Opp'n, Ex. A, Dkt. #34.)  Dr. Clark further testified that Plaintiff's knee was going to get a lot

26   worse "before many years pass."  *Id.*  Dr. Clark also testified that, based upon what Dr. Moskovitz,

27   another of Plaintiff's doctors, told him, he believed that Plaintiff would need a knee replacement.  *Id.*

28

7

1  Dr. Harvey Bruce Moskovitz testified that the x-rays of Plaintiff's knee revealed a "surprising"

2  amount of narrowing in Plaintiff's knee in a short period of time. (Pl.'s Opp'n, Ex. B, Dkt. #34.)

3  Based on this testimony, the Court finds *Bellman* inapplicable.

4       Accordingly, the Court DENIES Defendant's MIL No. 6.

5  **IV.  CONCLUSION**

6       Based on the foregoing, the Court GRANTS Defendant's MIL Nos. 1-4 and DENIES

7  Defendant's MIL Nos. 5 and 6.

8       **IT IS SO ORDERED.**

9

10  Dated: September 23, 2010

11

12  _____
Maria-Elena James
Chief United States Magistrate Judge

8